Joel G. MacMull, Esq.
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
Tel.: 973-736-4600
Fax: 973-325-7467
Email: jmacmull@mblawfirm.com

Rhett Barney, Esq. (*Pro hac vice admission forthcoming*)
Robert Carlson, Esq. *Pro hac vice admission forthcoming*)
Johanna Thomlinson, Esq. (*Pro hac vice admission forthcoming*)
**LEE & HAYES P.C.**
701 Pike Street, Suite 1600
Seattle, Washington 98101
Tel: 206-315-4001
Fax: 509-323-8979
Email: rhettb@leehayes.com
        bob@leehayes.com
        johanna.tomlinson@leehayes.com

*Attorneys for Newsweek Publishing LLC and*
*Newsweek LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEWSWEEK LLC; NEWSWEEK PUBLISHING LLC,<br><br>    *Plaintiffs,*<br><br>    *v.*<br><br>SHOWMARK MEDIA LLC,<br><br>    *Defendant.* | CIVIL ACTION NO.<br><br>26-cv-1550<br>_____<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Newsweek LLC and Newsweek Publishing, LLC (collectively, "Newsweek" or "Plaintiffs"), by and through its undersigned counsel, brings this action for trademark infringement, unfair competition, dilution and violations of New York state law against defendant Showmark Media LLC ("Showmark" or "Defendant"), and complains and states as follows:

## NATURE OF THE CASE

1.     This action arises from Showmark's unauthorized use of Newsweek's famous NEWSWEEK trademarks in a manner likely to cause consumer confusion as to affiliation, sponsorship, or endorsement. Showmark has used the NEWSWEEK marks in connection with the manufacturing, advertising, marketing and sale of its own products and services to convey the impression that Showmark's offerings originate with, or are associated with, or are otherwise approved by Newsweek when they are not. Despite multiple instances of actual notice of Newsweek's trademark rights and Newsweek's objections to Showmark's use, Showmark has continued to use the NEWSWEEK marks, thereby exacerbating and embracing likely consumer confusion, and unlawfully trading on the goodwill of the NEWSWEEK brand, in violation of federal and New York trademark and unfair-competition laws.

## THE PARTIES

2.     Newsweek LLC is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business at 1 World Trade Center, 72nd Floor, New York, NY, 10007.

1

3.    Newsweek Publishing LLC is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business at 1 World Trade Center, 72nd Floor, New York, NY, 10007.

4.    On information and belief, Showmark is a Delaware limited liability company with its registered agent address located at 131 Continental Drive, Suite 301, Newark, Delaware 19713. On information and belief, Showmark's principal place of business is located at 4 Research Drive, Suite 402, Shelton, Connecticut 06484.

## JURISDICTION AND VENUE

5.    This civil action for trademark infringement and unfair competition arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. §§ 1114 and 1125(a). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has subject matter jurisdiction over Newsweek's claims that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because those claims are related to and arise from the same set of facts as Newsweek's federal claims.

7.    This Court has personal jurisdiction over Showmark. On information and belief, Showmark conducts and solicits business throughout the United States, including in the State of New York and within this District, by offering its products and services through its website and by targeting, and selling products to, recipients of awards and accolades residing or located in New York and in this District. Showmark has also committed tortious acts in this District. Showmark's Terms of Use further provide that any action or claim arising out of or related to those Terms of Use shall be brought exclusively in the state and

2

federal courts located in the City of New York and specifies that users consent to personal jurisdiction in such courts. Showmark has therefore invoked the protection of this Court in its business dealings, for its own benefit.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c) because Showmark is subject to personal jurisdiction in this District, has purposefully directed its commercial activities here, and a substantial part of the events giving rise to Newsweek's claims occurred in this District. Showmark has also committed tortious acts in this District. Showmark has further consented to venue in New York through its Terms of Use governing disputes arising from its services.

## BACKGROUND

## I.    Newsweek and the NEWSWEEK Marks

8. Newsweek is a global media company and the publisher of *Newsweek*, a nationally and internationally recognized news magazine and digital publication.

9. Since its founding in 1933, *Newsweek* has been continuously published and distributed to the public and has become one of the most well-known brands in American journalism.

10. For decades, Newsweek has provided original reporting, commentary, analysis, and rankings covering national and international news, politics, business, technology, science, culture, and public affairs.

11. Through its print magazine, website, newsletters, and related digital platforms, Newsweek reaches tens of millions of readers monthly in the United States, including in New York, and over 100 million readers monthly around the world.

3

12.     In connection with these goods and services, Newsweek has continuously used the NEWSWEEK brand and trademarks in commerce for more than ninety years.

13.     Through this long and substantially exclusive use, the NEWSWEEK marks have acquired strong common-law trademark rights and have come to be uniquely associated by consumers with Newsweek as the source of high-quality journalism and related media services.

14.     In addition to its extensive common-law rights in the famous NEWSWEEK marks, Newsweek LLC is the owner of numerous federal trademark registrations for the NEWSWEEK marks, including:

| Mark | U.S. Reg. No. | Reg'n Date | Class and Good/Services |
|------|---------------|------------|-------------------------|
| NEWSWEEK | 603,656 | 3/22/1955 | IC:16 Weekly magazine. |
| **Newsweek** | 2,000,346 | 9/10/1996 | IC: 42 On-line news service containing a computerized database featuring news stories and other news related material. |
| **Newsweek** | 1,413,355 | 10/14/1986 | IC:16 Magazine of general news and features. |

| **NEWSWEEK** | 2,418,759 | 01/09/2011 | IC: 42 Computer services, namely, providing an interactive on-line magazine in the fields of news and general interest information; providing general news information via a global computer network, namely, providing news reports, news columns and an interactive computer database in the field of news. |
|---|---|---|---|

(collectively, the "NEWSWEEK Marks").

15.     The above-referenced registrations are valid, well-known, subsisting and in full force, and serve as *prima facie* evidence of Newsweek's exclusive rights in and to the NEWSWEEK Marks. Additionally, the registrations referenced above have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus constitute conclusive evidence of Newsweek's exclusive right to use these marks on the goods and services specified in the registrations pursuant to Sections 7 and 33 of the Lanham Act, 15 U.S.C. §§ 1057, 1115(b).

16.     As a result of decades of continuous use, widespread circulation, significant investment in editorial content, and extensive promotion, the NEWSWEEK Marks are highly distinctive and enjoy substantial goodwill.

17.     The NEWSWEEK Marks serve as a source identifier signifying Newsweek and the excellent reputation, sterling credibility, and high journalistic standards associated with its publications.

5

18.     Members of the public encountering the NEWSWEEK Marks reasonably expect that goods and services offered under the marks originate from, are affiliated with, or are authorized by Newsweek.

## II.    Newsweek's Rankings, Accolades, and Licensed Recognition Programs

19.     In addition to its core journalism, Newsweek develops and publishes a wide range of industry rankings and accolade programs that recognize excellence across various sectors, including healthcare, business, education, and other professional services.

20.     These rankings are developed, published, and monetized through established commercial relationships between Newsweek and its authorized research and recognition partners.

21.     Newsweek maintains commercial agreements with third-party partners to design, build, administer, and monetize these ranking and accolade programs.

22.     Under these arrangements, Newsweek's partners conduct the underlying industry research, data collection, and benchmarking required to create the rankings.

23.     This research process is substantive, methodologically rigorous, and often time-intensive, particularly for multi-year or large-scale lists, and the associated costs are borne by Newsweek's partners pursuant to their agreements with Newsweek.

24.     Following completion of the research and benchmarking process, Newsweek publishes and promotes the resulting rankings and accolade lists under the NEWSWEEK Marks through its print and digital platforms.

6

25.    Publication under the NEWSWEEK Marks signals to the public that the rankings are the product of Newsweek's editorial oversight, brand standards, and authorized research partnerships.

26.    After publication, Newsweek's authorized partners contact entities or individuals named as "winners" or honorees on a given list. These communications relate to optional recognition opportunities associated with the ranking, including licensed digital assets and physical recognition products such as plaques or awards.

27.    Such recognition products are offered pursuant to license and authorization from Newsweek, and revenues derived from these recognition programs is shared between Newsweek and the authorized partner responsible for that particular list.

28.    Through this model, Newsweek maintains control over the use of its trademarks in connection with rankings and recognition products, ensures consistency and quality in how its accolades are presented to honorees and the public, and preserves the goodwill and reputation associated with the NEWSWEEK Marks.

III.    **Showmark Media LLC and Its Business Model**

29.    On information and belief, Showmark is a company that markets and sells recognition products, including plaques and similar display items, intended to commemorate professional achievements, awards, or distinctions.

30.    Upon information and belief, Showmark identifies individuals and organizations that have been publicly recognized by third-party publishers or ranking organizations and contacts those recipients to offer recognition products referencing the underlying award or accolade.

7

31.     Showmark offers these products directly to recipients of such recognitions, marketing the plaques or awards as a means of memorializing or displaying the honor.

32.     Showmark's business model does not involve conducting the underlying research, benchmarking, or evaluation that forms the basis for the awards or rankings themselves.

## IV.     Showmark's Unauthorized Use of the NEWSWEEK Marks

33.     As described above, Newsweek publishes rankings and accolade lists under the NEWSWEEK Marks based on research and benchmarking conducted by Newsweek's authorized partners. Newsweek and its authorized partners maintain commercial arrangements governing the development, publication, and licensed monetization of these rankings and associated recognition products.

34.     Showmark is not an authorized Newsweek partner and has no license or permission to use the NEWSWEEK Marks in connection with its products or services.

35.     Nevertheless, upon information and belief, Showmark identifies entities and individuals named as "winners" or honorees of Newsweek-published rankings and contacts those honorees to market and sell plaques and other recognition products that reference Newsweek and its rankings.

36.     As shown in the examples below in Figures 1 and 2, Showmark uses certain NEWSWEEK Marks in a manner that suggests an affiliation, sponsorship, or authorization by Newsweek, despite the absence of any relationship between Showmark and Newsweek.

37.    In unlawfully using the NEWSWEEK Marks, Showmark's use of "NEWSWEEK" is also substantially similar to, and therefore an infringement of, Newsweek's registered stylized wordmark **Newsweek** embodied in U.S. Reg. No. 2,000,346.



4906-5590-9266, v. 2

*Figure 1*



4906-5590-9266, v. 2

*Figure 2*

38.    Showmark's conduct allows it to unlawfully capitalize on the goodwill and reputation associated with the NEWSWEEK Marks and Newsweek's rankings without participating in, contributing to, or bearing the costs of the underlying research, benchmarking, editorial oversight, or other administrative tasks associated with the licensed recognition programs.

**V.    Newsweek's Notice to Showmark and Continued Infringement**

39.    Newsweek monitors and enforces its trademark rights to protect the distinctiveness and goodwill associated with the NEWSWEEK Marks.

40.    After learning of Showmark's unauthorized use of the NEWSWEEK Marks, on April 29, 2025, Newsweek notified Showmark that its conduct was unlicensed and infringed upon Newsweek's trademark rights and demanded that Showmark cease its use of the NEWSWEEK Marks.

41.    On May 5, 2025, Showmark acknowledged receipt of Newsweek's notice and indicated that it would respond formally.

42.    Showmark never formally responded to the April 29th letter, and instead continued to use the NEWSWEEK Marks in connection with the manufacturing, advertising, marketing and sale of its recognition products.

43.    On November 7, 2025, Newsweek again sent a formal demand letter to Showmark, which once more placed Showmark on notice that its conduct was unlicensed and infringed upon Newsweek's substantial trademark rights, among other legal violations, and demanded that Showmark cease its use of the NEWSWEEK Marks.

44.     On November 13, 2025, Showmark responded, stating that it would not cease use of the NEWSWEEK Marks in connection with the manufacturing, advertising, marketing and sale of its recognition products.

45.     Showmark's refusal to cease use of the NEWSWEEK Marks, and its continued conduct after receiving notice of its unlawful acts has intentionally perpetuated consumer confusion and continued the infringement of Newsweek's trademark rights.

## COUNT I

### TRADEMARK INFRINGEMENT
### IN VIOLATION OF (15 U.S.C. § 1114)

46.     Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

47.     Newsweek is the owner of multiple U.S. federal trademark registrations for NEWSWEEK on the Principal Register.

48.     The registrations cover news publishing, digital media, and related services.

49.     The registrations are valid and subsisting and constitute *prima facie* evidence of ownership and validity.

50.     Newsweek has used the NEWSWEEK Marks in United States commerce continuously for decades, establishing strong common-law rights in addition to the foundation for its U.S. trademark registrations.

51.     Showmark uses the NEWSWEEK Marks (or substantially indistinguishable variations) in connection with marketing and selling plaques and recognition products.

52.     Showmark's use occurs in interstate commerce, including communications directed to Newsweek honorees nationwide and in New York.

13

53.    Showmark is not licensed, authorized, or otherwise permitted to use the NEWSWEEK Marks.

54.    Showmark is not a Newsweek partner, never has been a Newsweek partner, and does not participate in Newsweek's authorized rankings and recognition programs.

55.    Showmark uses the same or confusingly similar marks to the NEWSWEEK Marks in interstate commerce, without Newsweek's consent, in connection with the manufacturing, advertising and sale of confusingly similar goods or services.

56.    Newsweek publishes rankings and accolades under the NEWSWEEK Marks through an established, licensed program involving authorized partners.

57.    In this program, honorees are contacted by Newsweek's authorized partners to offer licensed recognition products.

58.    Showmark contacts many of Newsweek's honorees, referencing Newsweek rankings to sell similar but unauthorized recognition products, including electronic and physical plaques, banners, marquees, and other products that memorialize a Newsweek accolade.

59.    Showmark's conduct creates the false impression that Showmark is affiliated with Newsweek, or that Showmark is authorized to offer Newsweek-branded recognition products and services, or that the products are endorsed or approved by Newsweek, when they are not.

60.    This conduct creates a likelihood that recipients of the outreach and others will be confused as to the origin of such products, or their authorization, sponsorship, or affiliation with Newsweek.

14

61. Thus, Showmark's use of the NEWSWEEK Marks is likely to cause confusion, mistake, or deception as to source, sponsorship, affiliation, or approval.

62. Showmark's unauthorized and unlawful conduct is willful.

63. Newsweek notified Showmark repeatedly that its use of the NEWSWEEK Marks was unauthorized and infringing.

64. Showmark acknowledged receipt of Newsweek's notices.

65. Despite such notice, Showmark continues to unlawfully use the NEWSWEEK Marks in connection with its products.

66. Showmark's conduct as alleged in this Count thus constitutes willful infringement of Newsweek's U.S. registered trademarks in violation of 15 U.S.C. §1114.

67. Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

68. Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

## COUNT II

### UNFAIR COMPETITION
### IN VIOLATION OF 15 U.S.C. § 1125(a)

69. Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

70. The NEWSWEEK Marks are distinctive and are of incalculable value, and are associated in the public mind with Newsweek and goods and services of the highest quality.

71.    Without Newsweek's authorization or license and with knowledge of Newsweek's prior rights in the NEWSWEEK Marks, Showmark manufactured, advertised, offered for sale and sold, infringing products or services under and/or bearing the NEWSWEEK Marks.

72.    Showmark's conduct is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection, or association between Showmark and Newsweek, and/or as to Newsweek's sponsorship or approval of Showmark's goods, services, and/or commercial activities.

73.    Showmark's aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

74.    As a result of the foregoing, Showmark has falsely designated the origin of their products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.    Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

76.    Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

**COUNT III**

**FALSE DESIGNATION OF ORIGIN**
**IN VIOLATION OF 15 U.S.C. § 1125(a)**

77.    Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

78.     Showmark's use of marks identical and/or highly similar to the NEWSWEEK Marks and other designations and indicia is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of products and services bearing such marks, and is likely to cause such parties to believe in error that the products and services bearing such marks have been authorized, sponsored, approved, endorsed, or licensed by Newsweek, or that Showmark is in some way affiliated with Newsweek.

79.     Showmark's acts constitute false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     Upon information and belief, Showmark intends to continue its willfully infringing acts unless restrained by this Court.

81.     Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

82.     Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

**COUNT IV**

**TRADEMARK DILUTION**
**BY BLURRING OR TARNISHMENT IN VIOLATION OF 15 U.S.C. § 1125(c)**

83.     Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

84.     Newsweek has used certain NEWSWEEK Marks continuously in U.S. commerce since at least 1933.

17

85.     The NEWSWEEK Marks are nationally and internationally recognized as the name of a major news publication, and the NEWSWEEK Marks are widely recognized by the general consuming public in the United States as a designation of source of goods and services originating with Newsweek.

86.     Newsweek's publications reach tens of millions of readers in the United States through print and digital platforms each month.

87.     The NEWSWEEK Marks have been the subject of extensive media exposure, promotion, and longstanding use in the United States and elsewhere around the world.

88.     The NEWSWEEK Marks have received broad public recognition in light of their extensive media exposure, promotion, and longstanding use in the United States and elsewhere around the world.

89.     Newsweek owns multiple U.S. federal trademark registrations for the NEWSWEEK Marks on the Principal Register, evidencing distinctiveness and strength.

90.     The NEWSWEEK Marks are famous within the meaning of 15 U.S.C. §1125(c), are distinctive, either inherently or through acquired distinctiveness, and are widely recognized by the general consuming public in the United States.

91.     Showmark uses the NEWSWEEK brand and marks in connection with the manufacturing, advertising, marketing and sale of its recognition products.

92.     Showmark's use is commercial and occurs in interstate commerce.

93.     The NEWSWEEK Marks became famous decades before Showmark's unlawful conduct outlined above.

94.     Showmark's use postdates both Newsweek's U.S. federal registrations and the NEWSWEEK Marks' acquisition of fame by widespread recognition.

95.     Showmark uses the NEWSWEEK Marks to manufacture, advertise, market and sell its own confusingly similar products, creating an association between Newsweek and Showmark's products where none exists.

96.     Showmark's use places the NEWSWEEK Marks into a commercial context that falls outside of Newsweek's authorized licensing program.

97.     Showmark's conduct associates the NEWSWEEK Marks with unauthorized third-party recognition products.

98.     Showmark's conduct is likely to cause dilution by blurring or dilution by tarnishment of the fame of the NEWSWEEK brand.

99.     Showmark's use of the NEWSWEEK Marks is likely to impair the distinctiveness of the famous NEWSWEEK Marks.

100.    Showmark's use is commercial in nature and is not necessary to describe Newsweek or its publications.

101.    Instead, Showmark's use of the NEWSWEEK Marks is designed to enhance the marketability of Showmark's products.

102.    Thus, Showmark's use is not nominative, descriptive, noncommercial, or otherwise exempt under 15 U.S.C. § 1125(c)(3).

103.    Showmark's conduct constitutes dilution under 15 U.S.C. §1125(c), entitling Newsweek to an injunction against Showmark's further use.

104.    Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

105.    Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

## COUNT V

## NEW YORK COMMON-LAW TRADEMARK INFRINGEMENT

106.    Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

107.    Newsweek is the owner of valid and protectable trademark rights in the NEWSWEEK Marks under New York common law.

108.    Newsweek has continuously and substantially exclusively used certain NEWSWEEK Marks in commerce since at least 1933 in connection with its news publication, digital media offerings, rankings, and related services, including within New York.

109.    Through decades of continuous use, extensive promotion, and widespread consumer exposure, the NEWSWEEK Marks have acquired strong distinctiveness and secondary meaning, and are widely recognized by New York consumers as identifying Newsweek as the source of the goods and services offered under the mark.

110.    Showmark has used, without authorization, license, or consent, the NEWSWEEK Marks and confusingly similar references in connection with the manufacturing, advertising, promotion, and sale of recognition products, including plaques

20

offered to individuals and entities in New York who are identified as honorees on Newsweek-published rankings.

111.    Showmark is not an authorized Newsweek partner and has no agreement permitting it to use the NEWSWEEK Marks in connection with any goods or services.

112.    Showmark's unauthorized use of the NEWSWEEK Marks is likely to cause confusion, mistake, or deception among an appreciable number of New York consumers as to the source, sponsorship, affiliation, or approval of Showmark's products.

113.    Newsweek operates a structured and licensed rankings and recognition program under the NEWSWEEK Marks through authorized partners pursuant to which honorees, including those within New York, are legitimately contacted to offer licensed recognition products associated with Newsweek's rankings.

114.    By contacting the same honorees and offering plaques referencing Newsweek accolades, Showmark is creating a likelihood that recipients will mistakenly believe Showmark is affiliated with, authorized by, or acting on behalf of Newsweek when it is not.

115.    Showmark's infringement upon Newsweek's exclusive rights is willful, in bad faith, and done with the knowledge of Newsweek's rights in the NEWSWEEK Marks, as demonstrated by the facts alleged above.

116.    As a direct and proximate result of Showmark's infringing conduct, Newsweek has suffered and will continue to suffer injury, including loss of control over the use of its trademarks, harm to its goodwill and reputation embodied in the NEWSWEEK Marks, and interference with Newsweek's licensed recognition programs and related commercial relationships.

117.    By reason of the foregoing, Showmark has engaged in trademark infringement under New York common law.

118.    Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

119.    Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

## COUNT VI

## NEW YORK COMMON-LAW UNFAIR COMPETITION

120.    Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

121.    Newsweek has expended substantial time, effort, and resources over decades to develop, promote, and maintain the goodwill, reputation, and commercial value associated with the NEWSWEEK Marks in New York, including in connection with its rankings and accolade programs.

122.    Those programs are the product of significant investment by Newsweek and its authorized partners in research, benchmarking, editorial oversight, and licensed recognition offerings, all of which are offered within New York under Newsweek's brand standards and quality controls.

123.    Showmark is not an authorized Newsweek partner and has no license or permission to use the NEWSWEEK Marks or to participate in Newsweek's rankings or recognition program.

124.    Nevertheless, Showmark has deliberately sought to capitalize on Newsweek's investment and goodwill by identifying entities and individuals in New York who are named as honorees on Newsweek-published rankings and contacting those same honorees to advertise, market and sell plaques and recognition products referencing Newsweek accolades.

125.    Showmark's conduct constitutes misappropriation of Newsweek's labor, skill, expenditures, and goodwill. By wrongly misappropriating the results of Newsweek's rankings and reputation, Showmark avoids the substantial costs associated with developing and validating the rankings, while exploiting the credibility and commercial value Newsweek has created.

126.    Showmark's conduct also interferes with Newsweek's legitimate and licensed recognition programs by diverting revenue opportunities away from Newsweek and its authorized partners, undermining Newsweek's ability to control how its brand is commercialized, and eroding the exclusivity and integrity of the NEWSWEEK Marks.

127.    Showmark's unfair competition with Newsweek's exclusive rights is willful, in bad faith, and done with the knowledge of Newsweek's rights in the NEWSWEEK Marks, as demonstrated by the facts alleged above.

128.    As a direct and proximate result of Showmark's unfair competition, Newsweek has suffered and will continue to suffer injury, including loss of goodwill, damage to its reputation, diminished control over its trademarks and rankings, and interference with existing and prospective business relationships.

129.    By reason of the foregoing, Showmark has engaged in unfair competition under New York common law.

130.    Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

131.    Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

**COUNT VII**

**TRADEMARK DILUTION**
**IN VIOLATION OF N.Y. GEN. BUS. LAW § 360-L**

132.    Newsweek incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

133.    The NEWSWEEK Marks are distinctive, famous and widely recognized by the consuming public, including in New York, and have acquired substantial goodwill and commercial value through decades of continuous use, promotion, and public exposure.

134.    Showmark has made commercial use of the NEWSWEEK Marks (or marks that are substantially similar) after they became famous.

135.    Showmark has used the NEWSWEEK Marks, and references thereto, without authorization in connection with the manufacturing, advertising, marketing and sale of recognition products to honorees identified from rankings published by Newsweek under the NEWSWEEK Marks.

136.    The foregoing uses are likely to cause confusion or mistake, to deceive as to the source or origin of such goods and services, or to injure Newsweek's business reputation.

24

137.    Showmark's unauthorized use of the NEWSWEEK Marks is likely to, and has, diluted the distinctive quality of the marks by weakening the exclusive association between the NEWSWEEK Marks and Newsweek, including by associating the NEWSWEEK Marks with unlicensed third-party recognition products outside Newsweek's authorized rankings and recognition program, the consequence of which has been to injure Newsweek's business reputation.

138.    Showmark committed the foregoing acts with the intent to cause confusion or mistake, or to deceive purchasers and prospective purchasers.

139.    Showmark willfully intended to cause dilution of the NEWSWEEK Marks.

140.    Showmark's aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Newsweek to sustain irreparable damage, loss, and injury.

141.    Newsweek has no adequate remedy at law, and is suffering irreparable harm as a result of Showmark's conduct detailed above in an amount to be determined at trial.

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38(b), Newsweek demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Newsweek respectfully prays for relief as follows:

A.    a judgment that Showmark has infringed and continues to infringe the NEWSWEEK Marks in violation of 15 U.S.C. §1114;

B.    a judgment that Showmark has willfully infringed the NEWSWEEK Marks;

25

C.    a judgment that Showmark has infringed Newsweek's rights in its common law trademarks, and is liable for unfair competition and false designation of origin in violation of 15 U.S.C. §1125(a);

D.    a judgment that Showmark has used in commerce a mark that is likely to cause dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. §1125(c);

E.    a judgment that Showmark is liable for unfair competition and infringement of Newsweek's trademarks under New York Common Law;

F.    a judgment that Showmark is liable for injury to business reputation and dilution of Newsweek's trademarks in violation of N.Y. Gen. Bus. Law §360-L;

G.    an order permanently enjoining Showmark, its officers, agents, servants, employees, and all persons acting in concert or participation with it, from (1) using the NEWSWEEK Marks, or any confusingly similar mark or designation, in connection with the manufacturing, advertising, promotion, marketing, sale, or offering for sale of any goods or services, including recognition products; and (2) from using in commerce any mark that is likely to cause dilution by blurring or dilution by tarnishment of the famous NEWSWEEK Marks; as authorized by 15 U.S.C. §§1116 and 1125(c)(1), and by N.Y. Gen. Bus. Law §360-M;

H.    a judgment awarding Showmark's profits, Newsweek's damages, and/or statutory damages to the extent permitted by law, including disgorgement of

all revenues and profits derived from Showmark's unlawful conduct, pursuant to 15 U.S.C. § 1117, and N.Y. Gen. Bus. Law §360-M and applicable New York law;

I.  a judgment awarding treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117, and N.Y. Gen. Bus. Law §360-M and applicable New York law, based on Showmark's willful and knowing infringement;

J.  a judgment awarding Newsweek's costs of suit, together with pre- and post-judgment interest as allowed by law; and

K.  such other and further legal and equitable relief as the Court deems just and proper.

27

Respectfully submitted,

Joel G. MacMull, Esq.
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
Tel.: 973-736-4600
Fax: 973-325-7467
Email: jmacmull@mblawfirm.com

Rhett Barney, Esq. (*Pro hac vice admission forthcoming*)
Robert Carlson, Esq. *Pro hac vice admission forthcoming*)
Johanna Thomlinson, Esq. (*Pro hac vice admission forthcoming*)
**LEE & HAYES P.C.**
701 Pike Street, Suite 1600
Seattle, Washington 98101
Tel: 206-315-4001
Fax: 509-323-8979
Email: rhettb@leehayes.com
        bob@leehayes.com
        johanna.tomlinson@leehayes.com

*Attorneys for Plaintiffs Newsweek LLC and*
*Newsweek Publishing LLC*

Dated: February 24, 2026.